**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Michael Ray CARTER,
Defendant-Appellant.**

**No. 10841.**

Missouri Court of Appeals,
Southern District,
Division One.

July 17, 1979.

Motion for Rehearing or to Transfer to
Supreme Court Denied Aug. 1, 1979.

**216**

John D. Aschroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

David Robards, Joplin, for defendant-appellant.

GREENE, Judge.

On October 4, 1977, defendant Michael Ray Carter was convicted of the crime of murder in the second degree (§ 559.020 [1]) and thereafter was sentenced to life imprisonment in accordance with the jury verdict.

Defendant appeals the judgment and sentence of the trial court.

The amended information filed in the case alleged that defendant willfully, premeditatedly, and with malice aforethought killed Billy Joe Kralicek by beating him to death with a metal mop wringer. Defendant entered pleas of not guilty and not guilty by reason of mental disease or defect to the charge. At time of trial, defense counsel, in his opening statement, said that his defense was two-pronged, with the first defense being insufficient evidence by the state to show an intentional killing, and the second being that defendant, at the time of the killing, was suffering from a mental disease or defect excluding responsibility.

▇▇▇ The state's evidence established by at least four witnesses that defendant, on May 25, 1976, struck Kralicek in the head a number of times with a heavy metal mop wringer while the two were cellmates in the Jasper County jail. The force and frequency of the blows were such that the head of Kralicek was battered beyond recognition. In fact, it was necessary to use jail records, including a description of tatoos on the victim's body, to identify him. The state's evidence made a submissible case of second degree murder. Once a prima facie case of conventional second degree murder is made out, it is the jury's function to determine whether the killing was intentional, *State v. Bolden*, 494 S.W.2d 61, 65 (Mo.1973), and committed without provocation, *State v. Stapleton*, 518 S.W.2d 292, 299–300 (Mo. banc 1975).

Defendant's evidence sought to bolster his defenses of not guilty by reason of mental disease or defect excluding responsibility, and lack of criminal intent to commit second degree murder. Several witnesses testified to bizarre behavior of defendant prior to the killing. The witnesses stated that defendant told them he was under the direct control of a communist brain wave transmitter, that defendant quoted from the book of Revelation, and that he thought

1. Unless otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1969, V.A.M.S.

he was the new Christ. During his attack on Kralicek, defendant made statements like "going around the merry-go-around", which did not make any sense to the witnesses, and about having to kill the devil.

There was no testimony in defendant's case relative to self-defense, or provocation, except for an exchange, on cross-examination, between the prosecuting attorney and defense witness Dr. Robert Turfboer. Turfboer was a psychiatrist who had examined defendant for the purpose of giving an opinion concerning his mental condition. Dr. Turfboer testified that, in his opinion, defendant was suffering from a mental disease or defect, known as toxic psychosis, on the night of May 25, 1976, when he killed Billy Joe Kralicek. He further testified that such mental disease or defect prevented defendant from appreciating the nature or quality of his conduct and made him unable to conform such conduct to the requirements of the law. He also testified that such mental disease or defect prevented defendant from intending to kill Kralicek.

On cross-examination, the following exchange occurred between the prosecuting attorney and Dr. Turfboer.

"CROSS EXAMINATION BY MR. ELLISTON: Q. Doctor, prior to you making all these diagnoses and statements here in court, you had benefit of Fulton Hospital records which are Defendant's Exhibits 'A', did you not, in fact, that's your copy?

A. This is the first one, yes.

Q. Were you aware that Mike originally in his statement said that this guy was coming at him with a knife so he had to kill him with the mop wringer in self defense?

A. Yes, he has said so."

At the close of all the evidence, the trial judge gave instructions in writing to the jury. The instructions that are pertinent to this appeal are Instruction No. 4 (second degree murder verdict director—MAI–CR 6.06, as modified by 2.30 and 2.05), No. 5 (converse on issue of intent, which was an element of second degree murder—MAI–CR 3.02), and No. 6 (manslaughter verdict director—MAI–CR 6.08, as modified by 2.30).

Instruction No. 4, as given, read as follows: "If you find and believe from the evidence beyond a reasonable doubt:

First, that on the 25th day of May, 1976, in the City of Carthage, County of Jasper, State of Missouri, the defendant caused the death of Billy Joe Kralicek by striking him, and

Second, that the defendant intended to takee (sic) the life of Billy Joe Kralicek, then you will find the defendant guilty of murder in the second degree, unless you find and believe from the greater weight of the evidence that the defendant is not guilty by reason of mental disease or defect excluding responsibility as submitted in Instruction No. 8.

If you do find the defendant guilty of murder in the second degree you will fix his punishment at imprisonment by the Department of Corrections for a term fixed by you, but not less than ten years nor more than life imprisonment."

This instruction omitted the following paragraph, which is an integral part of MAI–CR 6.06.

Third, that the defendant did not do so in (anger) (fear) (agitation) suddenly provoked by the unexpected acts or conduct of [name of victim].

The court also refused Instruction No. A, offered by defendant, which reads as follows:

"If the evidence of defendant's mental disease or defect in this case leaves in your mind a reasonable doubt that Michael Ray Carter intended to kill Billy Joe Kralicek, you will find the defendant not guilty of murder in the second degree."

No instruction was given on justifiable homicide, and none was requested. The transcript does not indicate whether defendant objected, at time of trial, to the instructions given by the court.

After the verdict, defendant timely filed a motion for new trial, which was overruled. Defendant then appealed, raising

three points, which are 1) that the trial court committed reversible plain error in failing to instruct the jury that to convict defendant of murder in the second degree, they must find that he was not suddenly provoked by the victim's unexpected acts or conduct; 2) that the trial court committed reversible plain error in failing to instruct the jury on justifiable homicide when there was evidence in the record that defendant had acted in self-defense; and, 3) that the trial court erred in refusing to instruct the jury that evidence of defendant's mental disease or defect could be considered in determining whether the defendant intended to kill the victim.

### FAILURE TO INSTRUCT ON THE ELEMENT OF PROVOCATION

■ Defendant, in his first assignment of error, contends that the trial court committed prejudicial error by omitting from Instruction No. 4 MAI–CR 6.06) a necessary element on which the state had the burden of proof, namely "Third, that the defendant did not do so in (anger) (fear) (agitation) suddenly provoked by the unexpected acts or conduct of [name of victim]". Defendant did not raise this issue in his motion for new trial and does not state in the points relied on wherein and why the instruction is prejudicially erroneous, as is required by rule 84.04(d). He has not preserved the assignment for review. *State v. Miceli,* 549 S.W.2d 113, 117 (Mo.App.1977); *State v. Grebe,* 512 S.W.2d 409, 410 (Mo.App.1974). We are requested to review the point as plain error, rule 27.20(c), and we elect to do so, as the omission of the paragraph in question from Instruction No. 4 was error, the prejudicial effect of which must be judicially determined. Rule 20.02(e); *State v. Sykes,* 559 S.W.2d 643, 646 (Mo.App.1977). Plain error review is not justified in matters involving jury instructions unless the trial court so misdirected or failed to instruct the jury on the law of the case that the misdirection or failure to instruct caused manifest injustice. *State v. Merritt,* 540 S.W.2d 183, 185 (Mo.App.1976). Manifest injustice is to be determined on a case-by-case basis. *State v. Sanders,* 541 S.W.2d 530, 533 (Mo. banc 1976).

■ The precise issue of the omission of the paragraph in question was presented in *State v. Gotthardt,* 540 S.W.2d 62, 65–67 (Mo. banc 1976). The supreme court, in a unanimous opinion, ruled that the omission of the third paragraph from a MAI–CR 6.06 instruction (Instruction No. 4 here) was prejudicial error. The court reasoned that MAI–CR 6.06 is drafted on the theory that when the jury is instructed on second degree murder and manslaughter, it is necessary to include paragraph third in the second degree murder verdict director, so that the jury can understand the difference between manslaughter and second degree murder. *Gotthardt* is a path from which we cannot stray. The record is silent as to whether defendant here objected to Instruction No. 4, as given, or whether he requested a correct second degree murder verdict director, but that fact is of no consequence. The trial court is obligated to instruct on the law of the case, whether requested to do so or not, *State v. Harris,* 313 S.W.2d 664, 671 (Mo.1958), and that duty includes the obligation to instruct correctly. *State v. Webster,* 230 S.W.2d 841, 842 (Mo. 1950). The adoption of MAI–CR did not change that obligation. *State v. Gotthardt,* supra.

Instruction No. 4, as given, was not a correct statement of the law. It required merely a finding of intentional killing to justify a second degree murder conviction. It ignored an additional legal element, lack of provocation, which is necessary in order for such a conviction to stand. The state argues that there was no evidence of lack of provocation, and, therefore, the omission of that element from Instruction No. 4 was not fatal. The same argument was made and rejected in *Gotthardt.* It is not necessary that direct or eye-witness evidence be introduced on the issue of lack of provocation, as the facts necessary to make such a determination may be inferred from the proven facts and circumstances in evidence. See Note on Use 3, MAI–CR 6.06, effective 9–28–75.

■ The deletion of paragraph third (MAI–CR 6.06) from the second degree murder verdict director (Instruction No. 4

in this case) constituted reversible plain error, as such deletion destroyed the legal distinction between second degree murder and manslaughter, thus making it impossible for the jury, on a legal basis, to differentiate between those two degrees of homicide. *State v. Gotthardt,* supra. See also *State v. Randolph,* 496 S.W.2d 257 (Mo. banc 1973) where it was held that the omission of an excusable homicide instruction in a second degree murder case constituted reversible plain error, even though the defendant did not present evidence on the issue of accidental killing, did not request an instruction on that issue, and failed to assert error, by reason of refusal of such an instruction, in his motion for new trial.

Having concluded to reverse and remand, we consider other alleged errors where it appears reasonably certain that they may recur on retrial, and which should be resolved for that reason.

### JUSTIFIABLE HOMICIDE ISSUE

■ Evidence on this issue was introduced through the cross-examination of defense witness Turfboer. The questioning, though disjointed, seemed to show that at one time defendant had admitted to the police that he had killed Kralicek, but had done so in self-defense. Defendant's admission on this issue was contained in a case report which had been made available to the doctor to aid him in his evaluation. The admission was not made to the doctor, but was made to the police, and introduced into evidence by the state. Under those circumstances, there was evidence of self-defense in the case, and the jury should have been instructed on that issue, whether requested or not. MAI–CR 2.40. It may well be that on retrial, the cross-examination of Dr. Turfboer will take a different turn, and the issue will not be raised.

### FAILURE TO INSTRUCT THAT EVIDENCE OF DEFENDANT'S MENTAL DISEASE OR DEFECT COULD BE CONSIDERED BY THE JURY ON THE ISSUE OF INTENTIONAL KILLING

■ On January 1, 1979, in the aftermath of *State v. Anderson,* 515 S.W.2d 534 (Mo. banc 1974) and § 552.030(3)(1), the supreme court approved and made effective MAI–CR2d 3.74, the text of which is as follows:

"Evidence that the defendant (had) (did not have) (had or did not have) a mental disease or defect may be considered by you in determining whether the defendant had or did not have the state of mind required of [name of offense] and set out in Instruction No. _____ as an element of that offense.

If, after considering all of the evidence, including evidence that the defendant did or did not have a mental disease or defect, you find and believe from the evidence that the defendant engaged in the conduct submitted in Instruction No. _____ but have a reasonable doubt that he acted [insert the mental state involved, such as 'with the (purpose) (knowledge) submitted in that instruction', or 'purposely', or 'knowingly', or 'recklessly', or 'with intent to _____', or 'after considering taking the life of _____ and reflecting upon this matter cooly and fully before doing so'], then you must find the defendant not guilty of the offense of [name of offense] as submitted in Instruction No. _____."

In Notes on Use 5 and 6 following MAI–CR 3.74, it is stated that diminished mental capacity is a special negative defense, (which is the position taken by defendant here), and must be given, if supported by evidence and requested in the manner provided by rule 20.02. Assuming that on retrial defendant again presents expert opinion evidence to the effect that at the time of the killing defendant, by reason of mental disease or defect, did not have the state of mind necessary to intentionally kill the victim, then MAI–CR2d 3.74 must be given. *State v. Anderson,* supra, at 542[9].

The judgment is reversed and the cause remanded for retrial.

FLANIGAN, C. J., and TITUS, J., concur.

PREWITT, J., not participating because not a member of the court when cause was submitted.